## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CATHERINE WARREN,                  : Civil No. 1:24-CV-635
                                                  :

             Plaintiff,                  :

v.                                 :
                                         : (Chief Magistrate Judge Bloom)

LELAND DUDEK, Acting               :
Commissioner of Social Security,[1] :

             Defendant.                 :

## MEMORANDUM OPINION

## I.   Introduction

On May 19, 2020, Catherine Warren filed an application for disability and disability insurance benefits under Title II of the Social Security Act.  A hearing was held before an Administrative Law Judge ("ALJ"), who found that Warren was not disabled from her alleged onset date, December 3, 2019, to May 16, 2023, the date the ALJ issued the decision.

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 19, 2025.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

Warren now appeals this decision, arguing that the decision is not supported by substantial evidence. After a review of the record, we agree and conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case[2]

On May 19, 2020, Warren applied for disability and disability insurance benefits, alleging disability due to asthma, carpel tunnel syndrome, knee pain, bipolar disorder, and depression. (Tr. 80). Warren was 36 years old on her alleged onset date of disability, had a marginal education, and had past work as a packer. (Tr. 23-24). The underlying medical record revealed that along with her physical impairments, Warren treated for bipolar disorder and generalized anxiety disorder throughout the relevant period. (*See e.g.*, Tr. 691-794, 839-958, 1079-1455).

---

[2] We limit our discussion to the ALJ's underlying decision because, as we will discuss, we are remanding this matter due to the ALJ's failure to adequately explain the omission from the RFC determination of certain mental limitations he found persuasive.

The ALJ conducted a hearing on Warren's application for benefits on April 18, 2023, during which Warren and a vocational expert testified.[3] (Tr. 43-63). Following the hearing, on May 16, 2023, the ALJ issued a decision denying Warren's application for benefits. (Tr. 7-32). At Step 1 of the of the sequential analysis that governs Social Security cases, the ALJ concluded that Warren did not engage in substantial gainful activity since her amended onset date of disability, December 3, 2019. (Tr. 12). At Step 2, the ALJ found that Warren suffered from severe mental health impairments of generalized anxiety disorder and bipolar disorder. (*Id.*). At Step 3, the ALJ concluded that none of Warren's severe impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 13-16). The ALJ found that Warren had mild to moderate limitations in the four broad areas of mental functioning. (*Id.*).

Between Steps 3 and 4, the ALJ concluded that Warren:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying

---

[3] This hearing took place after the Appeals Council remanded the initial ALJ decision with instructions to obtain additional evidence regarding the claimant's impairments. (Tr. 146-49).

up to 20 pounds occasionally and up to 10 pounds frequently, standing and/or walking 6 hours and sitting 6 hours in an 8-hour workday. The claimant is further limited to: frequent balancing and stooping; occasional right foot control operation, climbing of ramps stairs, kneeling, crouching, and crawling; never climbing of ladders, ropes, or scaffolds; frequent right gross and fine manipulation and feeling; avoiding exposure to extreme cold, extreme heat, wetness, humidity, vibration, irritants, and hazards such as operating machines; and individual can understand and carry out simple routine repetitive tasks and can sustain attention for extended period of 2 hour segments while maintaining regular attendance and being punctual within customary limits

(Tr. 16).

In reaching this RFC determination, the ALJ considered the objective medical record, Warren's testimony, and the medical opinion evidence. (Tr. 16-23). With respect to the medical opinion evidence regarding Warren's mental impairments, the ALJ considered the opinions of the state agency psychological consultants and found these opinions persuasive. (Tr. 22). Dr. Timothy Ostrich, D.O., opined in October of 2020 that Warren could carry out very short and simple instructions, make simple decisions, and could meet the basic demands to complete one-to-two-step tasks on a sustained basis. (Tr. 87-88). Similarly, in January of 2021, Dr. John Gavazzi, Psy.D., found that

4

Warren could make simple decisions, carry out very short and simple instructions, and can perform one-and-two-step tasks. (Tr. 116). The ALJ found both opinions persuasive. (Tr. 22). The ALJ noted that these providers' limitations to one-to-two-step tasks were supported by the abnormal mental status findings in the record and with the findings that her medications and treatment were working well. (*Id.*). However, the ALJ did not include a limitation to one-to-two-step tasks in the RFC, instead limiting Warren to "simple routine repetitive tasks[.]" (Tr. 16).

Having made these findings, at Step 4 the ALJ found that Warren could not perform her past work but found at Step 5 that Warren could perform jobs in the national economy, such as marker, merchandiser; router; or order caller. (Tr. 24). Accordingly, the ALJ found that Warren had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 25-26).

This appeal followed. On appeal, Warren argues that the ALJ erred in considering the opinion evidence and failed to include adequate mental limitations in the RFC—specifically, a limitation to one-to-two-step tasks. After consideration, we conclude that the ALJ's opinion is not

supported by substantial evidence.  Accordingly, we will remand this matter to the Commissioner for further consideration.

## III.   Discussion

### A. Substantial Evidence Review – the Role of This Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decisionmaker are supported by substantial evidence in the record.  *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v.*

*Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether Warren is disabled, but rather whether the Commissioner's finding that he or she is not disabled

is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot reweigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v.*

8

*Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).  Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which

exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether Warren: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine Warren' residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20

C.F.R. § 404.1545(a)(1).  In making this assessment, the ALJ must consider all Warren' medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of the analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.  *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

Warren bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents her from engaging in any past relevant work.  *Mason*, 994 F.2d at 1064.  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that Warren can perform consistent with Warren' RFC, age, education, and work experience.  20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

11

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in May of 2020 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

13

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion

14

without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. The ALJ's Decision is Not Supported by Substantial Evidence.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," *Cotter*, 642 F.2d at 704, and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Here, Warren contends that the ALJ erred in failing to include a limitation in the RFC to "one-to-two-step tasks" despite finding the

opinions of the state agency consultants persuasive. Instead, the RFC limited Warren to "simple routine repetitive tasks[.]" (Tr. 16). While we believe this to be a close case, we conclude that the ALJ's failure to explain the omission of such a limitation from the RFC determination warrants a remand.

While an ALJ is not required to accept every limitation set forth in an opinion that is found to be persuasive, the decision must adequately explain the rationale behind the RFC determination. *Durden*, 191 F. Supp. 3d at 455. Here, the ALJ found the consulting providers' opinions persuasive. In doing so, the ALJ specifically noted the providers' limitation to one-to-two-step tasks and found this limitation persuasive, as it was supported by the objective medical evidence. (Tr. 22). However, the ALJ failed to include a limitation to one-to-two-step tasks in the RFC, instead limiting Warren to simple, routine, repetitive tasks.

In our view, the ALJ's decision is not supported by substantial evidence. In making this finding, we are persuaded by at least one case in this circuit that considered this same issue. In *Cowher v. O'Malley*, 2024 WL 3161865 (W.D. Pa. June 24, 2024), the court considered a

similar argument by the plaintiff.  In that case, the ALJ found persuasive two opinions that limited the plaintiff to "very short and simple instructions," but failed to include such a limitation in the RFC, instead limiting the plaintiff only to "simple instructions."  *Id.* at *7.  The court first noted that "a difference exists between an individual capable of following 'simple instructions,' and an individual only capable of following 'very short and simple instructions (i.e., perform one and two step tasks)[.]'"  *Id.* (citations to the record omitted).  The court then considered how the Dictionary of Occupation Titles ("DOT") defines the different "reasoning development" levels associated with certain occupations: "Jobs at Reasoning Development Level 1 ('R1') require an employee to '[a]pply commonsense understanding to carry out *simple one- or two-step instructions*[,]' while Jobs at Reasoning Development Level 2 ('R2') require the ability to '[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*[.]'"  *Id.* (citing Appendix C – Components of the Definition Trailer, 1991 WL 688702 (emphasis in original)).

17

The *Cowher* court went on to conclude that a limitation to "very short and simple instructions" was likely inconsistent with reasoning level 2 occupations. *Cowher*, 2024 WL 3161865 at* 7. The court further concluded that the ALJ failed to adequately explain the omission of such a limitation despite finding the opinions setting forth such a limitation persuasive, finding that the ALJ never addressed his decision to limit the plaintiff to only "simple" instructions, nor explained his rejection of the more restrictive limitation to "very short and simple instructions." *Id.* at *8. However, in that case, the court ultimately found that this error was harmless, as the ALJ identified at least one occupation at Step 5 with a reasoning level 1 that the plaintiff could perform. *Id.* at *9-10.

Here, we similarly find that the ALJ's omission of a one-to-two-step tasks limitation was not adequately explained in the decision. Despite finding the opinions of the consulting providers persuasive, the ALJ failed to adequately explain how the RFC limiting Warren to "simple routine repetitive tasks" accounted for the limitations to one-to-two-step tasks that the ALJ found persuasive. As we have noted, while the ALJ is not required to accept every limitation set forth in an opinion he finds

persuasive, he must at a minimum explain the rationale behind the RFC determination. *Durden*, 191 F. Supp. 3d at 455. Further, the ALJ may not "reject evidence for no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Here, the ALJ discussed these opinions and specifically found the limitation to one-to-two-step tasks persuasive. However, the ALJ failed to provide an adequate explanation for discounting this limitation and instead limited Warren to simple, routine, repetitive tasks. While the ALJ may have relied on other evidence in the record to conclude that such a limitation was not credibly established, there is nothing in the decision to indicate which evidence he relied on or why he rejected this specific limitation set forth by both Dr. Ostrich and Dr. Gavazzi, whose opinions he found persuasive. Accordingly, we conclude that the ALJ's omission of the "one-to-two-step tasks" limitation was not adequately explained in the decision, and therefore, is not supported by substantial evidence.

We further conclude that this error is not harmless. Social Security appeals are subject to harmless error analysis. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Under the harmless error

analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ." *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

In this case, the ALJ's decision at Step 5 identified three jobs that Warren could perform—marker, merchandiser (DOT 209.587-034, 1991 WL 671802); router (DOT 222.587-038, 1991 WL 672123); and order caller (DOT 209.667-014, 1991 WL 671807), all of which require reasoning level 2. As discussed in *Cowher*, as well as in several other cases we find persuasive, a limitation to one-to-two-step tasks can (but does not always) preclude jobs requiring reasoning level 2, as such jobs require that an individual be able to carry out "detailed but uninvolved written or oral instructions." *See Cowher*, 2024 WL 3161865, at *9-10; *see also Leach v. Kijakazi*, 70 F.4th 1251, 1257 (9th Cir. 2023) ("A level-two job with 'detailed but uninvolved ... instructions' could require an employee to follow lengthy simple instructions. On the present record, then, we cannot determine whether the level-two jobs identified by the vocational expert require only short, simple instructions."); *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019) ("We believe that Thomas,

being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.").

Here, the jobs identified by the ALJ at Step 5 require a reasoning level 2, which could be inconsistent with a limitation to one-to-two-step tasks. Further, we have concluded that the ALJ did not adequately explain the omission of such a limitation. Given that such a limitation could preclude the jobs identified by the ALJ at Step 5, we find that the failure to explain this omission is not harmless and requires a remand.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter. Rather, that task is left to the ALJ on remand.

## IV.    <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner will be REMANDED for further consideration.

An appropriate order follows.

21

_s/ Daryl F. Bloom_
Daryl F. Bloom
Chief United States Magistrate Judge

Date: April 22, 2025